1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                             Plaintiff,<br><br>v.<br><br>WAFA MURAD,<br><br>                            Defendant. | Case No.:  21-CR-2701 TWR<br><br>**ORDER DENYING MOTION FOR A NEW TRIAL AND TO DISMISS COUNT 1**<br><br>(ECF No. 59) |

Presently before the Court is Defendant Wafa Murad's Motion (1) for a New Trial, and (2) to Dismiss Count 1 ("Mot.," ECF No. 59),[1] through which Defendant seeks a new trial on the grounds that the Court failed to provide her with a Jordanian interpreter for trial under the Court Interpreters Act ("CIA"), 28 U.S.C. §§ 1827–1828, and that her trial counsel's failure to secure an interpreter for trial constituted ineffective assistance of

---

[1] Although the caption of Plaintiff's Notice seeks dismissal of Count 2 of the Indictment, the Motion itself seeks dismissal of Count 1.  (*Compare* Mot. at 1, with *id.* at 11.)  To avoid ambiguity, citations to the Motion refer to the CM/ECF pagination electronically stamped at the top of each page.

Defendant's Motion also included a request to shorten time because it was filed only three days before the originally scheduled June 3, 2022 hearing date.  The Court implicitly granted Defendant's request to shorten time on June 3, 2022, by ordering the government to file a response within three weeks.  (*See* ECF No. 61.)

counsel. (*See* Mot. at 4–11.) Defendant also seeks dismissal of Count 1 of the Indictment for aiding and abetting the bringing in of aliens for financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2 on the grounds that there is a lack of evidence that she acted for financial gain. (*See* Mot. at 11.) Also before the Court is Plaintiff the United States of America's Opposition ("Opp'n," ECF No. 70) to Defendant's Motion.

The Court held an evidentiary hearing on the Motion on August 17, 2022, (*see* ECF Nos. 74 (minute entry), 76 ("Aug. 17, 2022 Tr.")), following which the United States (ECF No. 77 ("U.S. Br.")) and Defendant (ECF No. 78 ("Def.'s Br.")) filed written closing arguments at the Court's request. Having carefully reviewed the Parties' filings, the record, and the relevant law, the Court **DENIES** Defendant's Motion in all respects.

## BACKGROUND

### I.    Defendant's Arrest and Pre-Trial Proceedings

On the evening of July 16, 2021, Defendant was arrested at the San Ysidro port of entry pursuant to 8 U.S.C. § 1324 when Jose Luis Rosales-Flores was found in a compartment in the trunk of her car. (*See* Post-Arrest Tr. at 8:4–6, 11:3–4, 12:23–13:5, 45:18–46:5); *see also* Complaint, *United States v. Murad*, No. 21-CR-2230 JLS (S.D. Cal. filed July 19, 2021) (the "Prior Criminal Case"), ECF No. 1 ("Complaint"); Indictment, *United States v. Murad*, No. 21-CR-2701 TWR (S.D. Cal. filed Sept. 15, 2021) (the "Present Criminal Case"), ECF No. 1 ("Indictment"). Following Defendant's arrest, Customs and Border Protection ("CBP") Officers Melvin Rebolledo and Luis Meza conducted an hour-long interview of her in English. (*See generally* Post-Arrest Tr.; *see also* ECF No. 55 ("Mar. 22, 2022 Tr.") at 60:6–8; Aug. 17, 2022 Tr. at 32:14–19.) Defendant never requested an interpreter, (*see generally* Post-Arrest Tr.), and clearly indicated when she did, (*see id.* at 8:13–12:14, 53:3–55:16, 60:1–64:1), and did not, (*see id.* at 47:1–49:4), understand the interviewing Officers, one of whom later testified that Defendant never gave "any indication that she didn't understand what [he] w[as] saying to her" and that he was "able to understand everything she said to [him]." (*See* Mar. 22, 2022 Tr. at 60:9–14.) The interview transcript reflects that Defendant even felt comfortable

speaking over the Officers and answering questions before they finished asking them.  (*See* Post-Arrest Tr. at 19:8–10, 21:16–18, 24:20–22, 27:12–14, 29:20–24, 31:14–22, 32:8–9, 36:1–13, 40:23–41:2, 44:4–17, 46:14–16, 47:17–20, 49:5–18, 50:11–14, 53:14–18, 56:7–10, 59:8–13.)

The Prior Criminal Case for violation of 8 U.S.C. § 1324(a)(2)(B)(iii) was opened against Defendant on July 19, 2021, *see* Complaint, on which date Defendant made an initial appearance represented by Blake Eaton of Federal Defenders.  *See* Minute Entry, *United States v. Murad*, No. 21-CR-2230 JLS (S.D. Cal. entered July 19, 2021), ECF No. 6 ("July 19, 2021 Minute Entry"); Tr. of Official Electronic Sound Recording of July 19, 2021 Proceedings, *United States v. Murad*, No. 21-CR-2230 JLS (S.D. Cal. filed Aug. 31, 2022), ECF No. 47 ("July 19, 2021 Tr.").  No request for an interpreter was made on the record, (*see generally* July 19, 2021 Tr.), and the following notation was subsequently added to the Docket: "***English.  No interpreter needed as to Wafa Hirzalla Murad (no document attached) (aje) [3:21-mj-02955-JLB] (Entered: 07/20/2021)."  Docket Entry 7, *United States v. Murad*, No. 21-CR-2230 JLS (S.D. Cal. entered July 19, 2021), ECF No. 7.  The Honorable Bernard G. Skomal appointed Federal Defenders to represent Defendant and ordered her released on a $15,000 personal appearance bond.  *See* July 19, 2021 Tr. at 4:13–15, 7:4–8; *see also* July 19, 2021 Minute Entry.

After Payam Fakharara of Federal Defenders entered an appearance for Defendant in the Prior Criminal Case on July 20, 2021, *see* Notice of Appearance as Lead Counsel, *United States v. Murad*, No. 21-CR-2230 JLS (S.D. Cal. filed July 20, 2021), ECF No. 5, Defendant moved to substitute Elliott Kanter as her counsel of record on July 21, 2021. *See* Motion to Substitute Attorney, *United States v. Murad*, No. 21-CR-2230 JLS (S.D. Cal. filed July 21, 2021), ECF No. 10.  The Honorable Jill L. Burkhardt granted Defendant's motion on July 23, 2021.  *See* Consent Order Granting Substitution of Attorney, *United States v. Murad*, No. 21-CR-2230 JLS (S.D. Cal. filed July 23, 2021), ECF No. 16 (the "July 23, 2021 Order").

/ / /

On August 12, 2021, Defendant was charged in the Prior Criminal Case with bringing in aliens without presentation in violation of 8 U.S.C. § 1324(a)(2)(B)(iii), *see* Information, *United States v. Murad*, No. 21-CR-2230 JLS (S.D. Cal. filed August 12, 2021), ECF No. 22, and arraigned before the Honorable Karen S. Crawford. *See* Minute Entry, *United States v. Murad*, No. 21-CR-2230 JLS (S.D. Cal. entered August 12, 2021), ECF No. 23 (the "Aug. 12, 2021 Minute Entry"). At the arraignment, Defendant was represented by Kristen Tsakalis and pleaded not guilty. *See id.* There is no indication on the docket that Defendant requested an interpreter at her arraignment. *See generally* Docket, *United States v. Murad*, No. 21-CR-2230 JLS (S.D. Cal.).

On September 15, 2021, Defendant was indicted on two counts for bringing in aliens for financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and aiding and abetting pursuant to 18 U.S.C. § 2 ("Count 1") and bringing in aliens without presentation in violation of 8 U.S.C. § 1324(a)(2)(B)(iii) ("Count 2"), (*see* ECF No. 1), prompting the opening of the Present Criminal Case. Defendant appeared before the Honorable Michael S. Berg through Mr. Kanter on October 26, 2021, at which time Magistrate Judge Berg granted the United States' oral motion to dismiss the Prior Criminal Case without prejudice, *see* Minute Entry, *United States v. Murad*, No. 21-CR-2230 JLS (S.D. Cal. entered October 26, 2021), ECF No. 39, and arraigned Defendant on Counts 1 and 2 of the Indictment. (*See* ECF No. 6.) Again, no request for an interpreter was made on the record, (*see generally* Docket), and the following notation was added to the docket: "***English. No interpreter needed as to Wafa Hirzalla Murad (no document attached) (aje) (Entered: 10/27/2021)." (*See* ECF No. 7.)

Three proceedings were held before the Honorable Janis L. Sammartino, (*see generally* ECF Nos. 10 (November 12, 2021), 11 (December 17, 2021), 13 (January 28, 2022)), before Judge Sammartino held a motion *in limine* hearing on February 18, 2022. (*See* ECF No. 17.) The Current Criminal Case was then transferred to the Honorable Dana M. Sabraw, (*see* ECF No. 18), and finally to the undersigned. (*See* ECF No. 23.) The undersigned held a status hearing outside Defendant's presence on March 2, 2022, setting

a motion *in limine* hearing for March 18, 2022, and a jury trial for March 22, 2022.  (*See* ECF No. 24.)

Defendant appeared through Mr. Kanter and without an interpreter for the motion *in limine* hearing on March 18, 2022.  (*See* ECF No. 26; *see also* ECF No. 54 ("Mar. 18, 2022 Tr.").)  The Court briefly interacted with Defendant at the motion *in limine* hearing, during which time Defendant indicated that she understood what the Court was ordering of her:

THE COURT: Just so the record is clear,

Ms. Murad -- did I pronounce that --

THE DEFENDANT: Murad.

THE COURT: Murad.

MR. KANTER: Murad.

THE COURT: Murad.  Okay.  Ms. Murad, you are ordered to appear before me on Tuesday, the 22nd of March at 9:00 a.m. for jury trial in this matter.

Do you understand, ma'am?

THE DEFENDANT: Yes.

THE COURT: And all the conditions of your pre-trial release that have been in effect up until today's date will remain in full force and effect from today until the 22nd of March, this coming Tuesday.

Do you understand, ma'am?

THE DEFENDANT: Yes.

THE COURT: Okay.

THE DEFENDANT: Thank you, Your Honor.

(Mar. 18, 2022 Tr. at 33:13–34:5.)  No request for an interpreter was made at the motion *in limine* hearing or at any of the other pretrial proceedings.  (*See generally* Docket.)

21-CR-2701 TWR

## II.    Defendant's Trial

### A.    Defendant's Request for an Interpreter

At 7:46 p.m. on Sunday, March 20, 2022—approximately a day-and-a-half before the scheduled trial date—Mr. Kanter emailed the undersigned's Courtroom Deputy to request an interpreter for trial:

> Dear Ms. Ortiz,
>
> Last Friday, I advised the court that an interpreter was not necessary. Please be advised that Ms. Murad would like an Arabic interpreter for the trial.
>
> Thank you,
>
> *Elliott Kanter*

(*See* Email, attached hereto as Exhibit A.)  Four minutes later, Ms. Ortiz forwarded Mr. Kanter's email to Gloria Mayne, the District's Manager of Interpreter Services, asking "would there be any way to coordinate an Arabic interpreter for the trial next week?" (*See id.*)

Ms. Mayne responded at 6:52 a.m. the following morning, indicating that she "w[ould] try to find two Arabic interpreters who can cover this trial starting tomorrow, but it may be difficult given the short notice and the fact that [the District] only ha[s] one local Arabic interpreter."  (*See id.*)

Ms. Mayne provided an update later that morning at 11:07 a.m., indicating that she had "contacted seven Arabic interpreters registered with the Administrative Office of the US Courts located in California" and that "[f]o[u]r have responded they are not available" and she was "still waiting for the response of two other interpreters." (*See id.*)  While one interpreter was available, Ms. Mayne was "hesitant to confirm only one interpreter" because "[f]or jury trials two interpreters should work together in tandem to avoid mental fatigue and be able to maintain the accuracy of the proceedings."  (*See id.*)

Ms. Mayne provided a further update that afternoon at 1:21 p.m., opining that "at this point it is unlikely [that the remaining Arabic interpreters] will be available to be here

tomorrow morning," while "[t]he one interpreter who is available has expressed working [*sic*] in tandem during a trial event." (*See id.*)  Ms. Mayne "apologize[d] to the court for not having the interpreters ready for tomorrow," adding that "Arabic is a language of lesser diffusion in our District.  In order to secure availability, these types of hearings are confirmed sometimes weeks in advance." (*See id.*)

Ms. Mayne followed up one final time at 5:28 p.m. that evening to inform the Court that the only local Arabic interpreter was not available.  (*See id.*)

### B.   *Defendant's Decision to Proceed Without an Interpreter*

The jury trial began just before 9:00 a.m. the following morning, March 22, 2022. (*See* ECF No. 30; *see also generally* Mar. 22, 2022 Tr.)  The Court addressed Defendant's last-minute request for an interpreter at the outset:

> THE COURT:  Okay.  Good morning.
>
> All right.  We're set for jury trial.  We've got 43 available jurors so we're ready to go forward.
>
> Mr. Kanter, there was a request that was made, I believe late Sunday evening, regarding an Arabic interpreter.  We need at least a week or two lead time to make that arrangement.
>
> I'd like you to take some time and speak with your client to make sure that she is comfortable going forward without the assistance of an Arabic interpreter.  I did go through the record, and I believe there have been eight court appearances without the assistance of an interpreter.  My understanding is that the post-arrest statement was also conducted in the English language.  And I don't know whether in your interactions with her, you have used the assistance of an interpreter.
>
> But I do want you to speak with your client about her comfort level going forward without the assistance of an interpreter.  It's simply impossible to -- there are seven that are certified in the State of California.
>
> MR. KANTER:  Really.
>
> THE COURT:  And all seven of them were contacted yesterday by our interpreter unit.  They tried to do everything they possibly could, but five of

them I believe are already committed.  There was one that was tentatively a yes, but we need two to do the proper interpretation, because they need to relieve one another.  Even with the Spanish-language interpreters, we have two when we're in trial.  So it was not possible.

MR. KANTER:  Okay.  Can I have a second, Your Honor?

THE COURT:  Yes, please.

(Attorney/client discussion.)

MR. KANTER:  And, Your Honor, just so you know -- I should stand. I'm sorry.

The reason she wanted one was basically to -- it was for her comfort, you know, in terms of asking and answering questions.  It wasn't so much in terms of listening to the testimony.  And I know everything else is done in English, but those hearings were, again, nontestimonial for her.

THE COURT:  Sure.

MR. KANTER:  And she just felt more comfortable.  But I think at this point if we go slowly and if she doesn't understand something to advise us, we can go forward.

THE COURT:  She's comfortable proceeding in that fashion?

THE DEFENDANT:  Yes.

MR. KANTER:  Yes.

THE COURT:  Okay. And if there is any issue, Ms. Murad, with understanding anything that's being said, I'm more than happy to have the witness repeat the answer or to phrase it differently.  So I want you to be 100-percent comfortable with understanding everything that's happening.

You have the right to confront and cross-examine all of the witnesses. So if there is any witness that you are having difficulty understanding, or if you would like a break to talk with Mr. Kanter, I will accommodate that request.  Just let me know.  Okay, ma'am?

/ / /

THE DEFENDANT:  Thank you so much.

THE COURT:  Okay.

MR. KANTER:  Okay. Thank you.

(Mar. 22, 2022 Tr. at 4:12–6:21.)  Neither Mr. Kanter nor Defendant made any such request that day.  (*See generally id.*)

Mr. Kanter later testified that he had informed Defendant that she had the option to go forward with the trial in English or to continue the trial until an interpreter was available and that Defendant had indicated that she was comfortable going forward with the trial as scheduled in English.  (*See* Aug. 17, 2022 Tr. at 26:19–27:7.)  Defendant conversed with Mr. Kanter in English throughout the trial, (*see id.* at 30:23–31:10), and at no time "indicate[d] . . . that she was having linguistics difficulties following the trial" or that she "d[id no]t "understand what's going on" or what any "witness [wa]s testifying to."  (*See id.* at 31:11–19.)

### C.     Defendant's Testimony

The next day of trial began with Defendant's testimony.  (*See* ECF No. 56 ("Mar. 23, 2022 Tr.") at 163:19–208:25.)  Defendant testified that she had been living in the United States for twenty-three years and that she "underst[oo]d English," which she learned from "one semester at the college, English Second Language" and "[f]rom talking to people, at work, business."  (*See id.* at 164:13–24.)  Mr. Kanter noted that she had "a tendency to speak quickly," (*see id.* at 165:17), and, when he asked whether she was "nervous a little bit," she responded that she was "calming down."  (*See id.* at 165:24–25.)

Defendant did not hesitate to ask her counsel or the prosecution for clarification when she had difficulty understanding their questions.  For example, Mr. Kanter asked her at one point whether she had been sent to "secondary" at any of her prior crossings from Mexico into the United States over the previous few months.  (*See id.* at 167:23–24.)  Defendant responded, "What does it mean, secondary?"  (*See id.* at 167:25.)  Similarly, the prosecutor asked Defendant whether she had "ever t[old] the officers that [she had] dr[iven]

across Tijuana," (*see id.* at 203:23–24), at which point Defendant asked, "What across Tijuana?" (*See id.* at 203:25.)  Defendant even felt comfortable asking the prosecutor to "be[] patient with me, please[.]" (*See id.* at 204:15.)  Aside from these limited requests for clarification and patience, Defendant gave no indication that she had difficulty understanding the questions being asked of her or testifying in response. (*See generally id.*; *see also* Aug. 17, 2022 Tr. at 31:11–32:5.)

Indeed, Defendant was prepared to answer questions before her counsel finished asking them, (*see, e.g.*, Mar. 23, 2022 Tr. at 175:7–10, 175:11–14, 184:12–16, 185:14–15, 188:11–23, 192:9–13, 195:12–16, 196:17–197:1, 197:24–25, 198:23–199:5), and to interject with additional testimony. (*See, e.g.*, *id.* at 177:25–178:1.)  The same was true on cross-examination.   (*See, e.g.*, *id.* at 201:19–22, 202:15–16, 203:4–22, 205:4–6, 206:20–22.)  Both Mr. Kanter, (*see id.* at 188:11–23), and the prosecution, (*see id.* at 201:19–22, 206:25–207:4), even had to remind Defendant to allow them to finish their questions before she began answering them.  Defendant also evaluated the relatively poor English-speaking skills of some of the men with whom she had interacted in Tijuana. (*See id.* at 178:23–24.)

### D. The Verdict

The case was submitted to the jury a little after noon on the second day of trial, (*see* Mar. 23, 2022 Tr. at 266:17–22), and the jury returned with a verdict at approximately 10:45 a.m. the following morning. (*See* ECF No. 49 ("Mar. 24, 2022 Tr.") at 2:1–14.)  The jury found Defendant guilty on both Counts of the Indictment, (*see id.* at 2:19–3:5; *see also* ECF No. 36 (verdict form)), and Defendant was remanded into custody pursuant to 18 U.S.C. § 3143(a)(1). (*See* Mar. 24, 2022 Tr. at 10:1–11:20; *see also* ECF No. 35 (abstract of order remanding Defendant).)

## III. Defendant's Post-Trial Motions

Defendant filed a motion for bond pending sentencing on March 30, 2022, (*see* ECF No. 40), and the Court held a bond hearing on April 8, 2022, at which the hearing was continued to April 29, 2022. (*See* ECF No. 44; *see also* ECF No. 57 ("Apr. 8, 2022 Tr.").)

There is no indication that Defendant requested an interpreter for the bond hearing.  (*See generally* Docket.)

On April 21, 2022, Russell Babcock was substituted for Mr. Kanter as Defendant's counsel.  (*See* ECF No. 46.)  The parties jointly moved to continue the April 29, 2022 bond hearing to May 13, 2022.  (*See* ECF Nos. 47, 48.)  On May 9, 2022, a notation was added to the docket for the first time indicating that Defendant required an Arabic interpreter: "*** Arabic Interpreter needed as to Wafa Hirzalla Murad. (no document attached) (jao) (Entered: 05/09/2022)."  (*See* ECF No. 50.)

On May 13, 2022, Defendant made her first appearance represented by Mr. Babcock and assisted by an Arabic interpreter, and the bond hearing was further continued to June 3, 2022.  (*See* ECF No. 52.)  Mr. Babcock also mentioned for the first time at the May 13, 2022 hearing that he would be filing a motion for a new trial.  The Court ordered Mr. Babcock to file his papers so that the government would have at least one week before the June 3, 2022 hearing to file a response.

Nonetheless, Mr. Babcock did not file the motion to admit Defendant to bail or the instant Motion until May 31, 2022.  (*See* ECF Nos. 58, 59.)  The Court therefore converted the June 3, 2022 hearing to a status hearing, (*see* ECF No. 60), at which Defendant again was assisted by an Arabic-speaking interpreter.  (*See* ECF No. 61.)  At the June 3, 2022 status hearing, the Court reset the bond hearing for July 1, 2022.  (*See id.*)

The Court held the bond hearing on July 1, 2022, at which Defendant was again assisted by an interpreter.  (*See* ECF No. 68.)  At that time, the Court set a hearing on the instant Motion for August 12, 2022, and set a briefing schedule.  (*See id.*)  The Court converted the hearing into an evidentiary hearing at Mr. Babcock's request, (*see* ECF Nos. 71, 72), and reset the hearing for August 17, 2022, on its own motion.  (*See* ECF No. 73.)

## IV.   Evidentiary Hearing

Defendant was assisted by a court-certified Jordanian Arabic interpreter at the August 17, 2022 evidentiary hearing.  (*See* Aug. 17, 2022 Tr. at 3:16–4:2.)  Defendant called three witnesses to testify: (1) her neighbor, Ashley Campos, (*see id.* at 6:3–12:3);

(2) her former counsel, Mr. Kanter, (*see id.* at 12:14–39:21), and (3) herself, (*see id.* at 40:7–58:19).  (*See also* ECF No. 75 (witness list).)

### A.     Testimony of Ashley Campos[2]

Ms. Campos testified that she had been Defendant's next-door neighbor for approximately three to four years, during which time she would speak with Defendant approximately four or five times per week.  (*See* Aug. 17, 2022 Tr. at 7:12–24.)  Although they were "not super close friends," (*see id.* at 10:21–24), Defendant sometimes would drive Ms. Campos to work.  (*See id.* at 7:25–8:5.)

All of Ms. Campos' interactions with Defendant have been in English.  (*See id.* at 11:7–11.)  Based on her interactions with Defendant, Ms. Campos believed that Defendant spoke "[v]ery basic" English and could hold "very minimal conversations."  (*See id.* at 8:6–18.)  For example, Defendant had difficulty understanding and communicating in the past tense in English, (*see id.* at 9:2–19), or with directions.  (*See id.* at 9:20–10:1.)

### B.     Testimony of Elliott Kanter

Mr. Kanter testified that he has practiced as a criminal defense attorney for over forty years, over which time he had represented and secured interpreters for a number of non-English-speaking clients.  (*See* Aug. 17, 2022 Tr. at 16:2–19, 27:9–28:8; *see also* ECF No. 70-1 ("Kanter Decl.") ¶¶ 2–3.)  Defendant retained him soon after she was arrested and in custody.  (*See* Aug. 17, 2022 Tr. at 13:11–14; Kanter Decl. ¶ 4; *see also* July 23, 2021 Order.)

/ / /

---

[2] Defendant also introduced the Declaration of Rocio Campos, presumably Ashley Campos' mother, in support of her Motion, who attested that Defendant's "knowledge of the English language is limited" and, "[w]ithout a doubt, Wafa Murad is not proficient in English" and "has a very limited understanding, as a matter of fact."  (*See* ECF No. 59-1 at 10 ("Campos Decl.") ¶¶ 5–6.)  The government objects to the introduction of Rocio Campos', Kalki Khaira's, and Mr. Babcock's declarations pursuant to Criminal Local Rule 47.1(g)(4) because they did not testify and were not subject to cross-examination.  (*See* U.S. Br. at 1.)  The Court need not resolve the admissibility issue because the declarations do not alter the Court's analysis or conclusion.

1   Soon thereafter, on August 2, 2021, Mr. Kanter received an email from Defendant's

2   son, Hashem Murad. (*See* Aug. 17, 2022 Tr. at 18:17–19:1; *see also* ECF No. 59-1 at 14

3   ("Ex. F").) Defendant's son asked, "Can we have a translator present for [Defendant], as

4   her English comprehension is not the highest." (*See* Aug. 17, 2022 Tr. at 19:3–6; *see also*

5   Ex. F.) Mr. Kanter responded the same day that they could ask for an interpreter. (*See*

6   Aug. 17, 2022 Tr. at 21:1–6.) Defendant also sent an email to Mr. Kanter on December 5,

7   2021, in which she told him, "Don't forget the translate [*sic*] for court." (*See* ECF No. 59-

8   1 at 12 ("Ex. E"); *see also* Aug. 17, 2022 Tr. at 23:9–14.) Mr. Kanter responded, "Yes, I

9   remember about the translat[o]r…" (*See* Ex. E; *see also* Aug. 17, 2022 Tr. at 15–17.)

10   Mr. Kanter repeatedly testified, however, that—based on his experience and

11   personal interactions with Defendant—he did not believe it was necessary to request an

12   interpreter. (*See* Kanter Decl. ¶ 7; *see also* Aug. 17, 2022 Tr. at 17:7–18:2, 20:10–16,

13   22:6–10, 27:9–28:8, 34:21–35:6.) This is because he "didn't have any problems speaking

14   with [Defendant] and understanding what she was saying" while he represented her. (*See*

15   Aug. 17, 2022 Tr. at 15:3–10, 19:7–20:16.) Although Mr. Kanter did sometimes need to

16   repeat things to Defendant to explain them, as is common with many of his clients, (*see id.*

17   at 29:23–30:10), "she seemed to understand what [he] was saying." (*See id.* at 15:11–18.)

18   In other words, she responded appropriately when engaged in a continuous conversation.

19   (*See id.* at 15:22–16:1.)

20   Indeed, all of Mr. Kanter's discussions with Defendant were in English. (*See id.* at

21   28:9–21; *see also* Kanter Decl. ¶¶ 4–5.) Mr. Kanter and Defendant prepped for trial,

22   including Defendant's testimony, in English, (*see* Aug. 17, 2022 Tr. at 20:1–2, 29:2–15;

23   *see also* Kanter Decl. ¶ 5), and reviewed the discovery in English. (*See* Aug. 17, 2022 Tr.

24   at 28:22–29:1; *see also* Kanter Decl. ¶ 5.) During these conversations, Mr. Kanter

25   understood Defendant, (*see* Aug. 17, 2022 Tr. at 29:21–22; *see also* Kanter Decl. ¶ 6), and

26   Defendant appeared to understand him. (*See* Aug. 17, 2022 Tr. at 29:16–20; *see also*

27   Kanter Decl. ¶ 6.) Indeed, "[i]f [Mr. Kanter] had doubted [Defendant's] ability to speak

28   and understand English[, he] would have promptly requested an interpreter for court and

for [his] meetings with her, as [he] ha[d] done in other cases." (*See* Kanter Decl. ¶ 7; *see also* Aug. 17, 2022 Tr. at 17:13–18:2, 22:4–5.)

Mr. Kanter did not recall having any other discussions regarding an interpreter other than the discussions memorialized in the emails from Defendant and her son. (*See* Aug. 17, 2022 Tr. at 24:4–18; *see also* Kanter Decl. ¶ 8.) He also did not recall either of the associates who had previously worked for him, including Ms. Tsakalis, relaying to him that Defendant wanted an interpreter for court proceedings. (*See* Aug. 17, 2022 Tr. at 13:21–14:14.) The only time Mr. Kanter remembered Defendant requesting an interpreter was "right before the trial," (*see id.* at 22:11–15; *see also* Kanter Decl. ¶ 8), although she was not "adamant" about the request. (*See* Aug. 17, 2022 Tr. at 24:19–22.)

### C.  *Testimony of Defendant*

Defendant testified at the evidentiary hearing through a Jordanian Arabic interpreter, (*see* Aug. 17, 2022 Tr. at 3:16–4:2), although she frequently answered questions in English before they were fully asked or translated. (*See, e.g.*, *id.* at 40:23–25, 43:8–11, 44:1–13, 45:10–12, 54:18–24.) Indeed, Mr. Babcock twice instructed his client to answer in Arabic. (*See, e.g.*, *id.* at 40:23–25, 44:14–16.) Mr. Babcock even indicated at one point while Defendant was testifying in English that he was "not understanding her," (*see id.* at 43:12), although it was clear to the Court that Defendant was speaking about the warden at her facility. (*See id.* at 43:9–13.)

Defendant testified that she first came to the United States in 1999, (*see id.* at 41:6–7), and that she first "bec[a]me exposed to the English language" when she enrolled in a "[v]ery basic" three-month college course approximately two years later. (*See id.* at 41:8–20.) She "deal[s] with a lot of people in English" in her day-to-day life, (*see id.* at 51:15–17), and has a number of non-Arabic-speaking friends—including her surrogate, live-in son, Kalki Khaira, (*see id.* at 36:9–24, 37:13–15)—with whom she converses in English. (*See, e.g.*, *id.* at 51:18–52:14.) Indeed, while in custody, Defendant has spoken with Mr. Khaira almost daily on the phone in English. (*See id.* at 52:3–14, 57:4–7; *see also* ECF No. 69 (recordings of phone calls).) Defendant did speak Arabic at home with her

husband before he passed away in May 2018, (*see* Aug. 17, 2022 Tr. at 41:21–42:2; ECF No. 59-1 at 3 ("Murad Decl.") 2d ¶ 3;[3] *see also* ECF No. 59-1 at 5 ("Khaira Decl.") ¶ 5), and speaks more Arabic than English with her adult son, (*see* Aug. 17, 2022 Tr. at 52:18–23), but speaks primarily English with her adopted daughter. (*See id.* at 52:15–17, 52:24–53:1; *cf.* Murad Decl. 2d ¶ 3.)

Although Defendant has learned more English since being remanded into custody after the trial, (*see* Aug. 17, 2022 Tr. at 42:3–8), she "characterize[d her] ability to understand English right up until the trial" at "about 25 to 30 percent," particularly "when people speak very fast." (*See id.* at 42:11–15; *see also* Murad Decl. 2d ¶ 3 (attesting that Defendant is "not fluent in English" and "does not speak or understand English fluently"); Khaira Decl. ¶ 6 ("Without a doubt, Wafa Murad is not fully proficient in English.").) As far as communicating with others, "people ask [her] to rephrase something or to repeat something" "[a] lot." (*See* Aug. 17, 2022 Tr. at 42:16–25.) Defendant still considers Arabic to be her "primary language," (*see id.* at 48:7–10), and Mr. Kanter never specifically inquired into Defendant's ability to speak English. (*See id.* at 46:22–24.)

Defendant testified that she told "every attorney that [she] spoke to and that appeared for [her] . . . that [she] needed an interpreter." (*See id.* at 56:4–8.) Specifically, Defendant requested an interpreter at her initial hearing, (*see id.* at 54:25–55:12), at which time she was represented by Mr. Eaton, *see* July 19, 2021 Minute Entry, and on both occasions that she was represented by a female associate from Mr. Kanter's firm after she had retained him.[4] (*See* Aug. 17, 2022 Tr. at 45:10–46:10, 55:17–56:3.) In addition to the emails she

---

[3] Defendant's Declaration contains two third paragraphs, (*see generally* Murad Decl.); the Court cites to the second of these.

[4] Mr. Kanter was substituted in as Defendant's counsel on July 23, 2021. *See* July 23, 2021 Order. Although Kristen Tsakalis appeared on Defendant's behalf at her second court appearance on August 12, 2021, *see* Aug. 12, 2021 Minute Entry, Mr. Kanter represented Defendant at her next hearing on October 21, 2021, *see* Minute Entry, *United States v. Murad*, No. 21-CR-2230 JLS (S.D. Cal. entered October 26, 2021), ECF No. 36, and at all subsequent pre-trial hearings. (*See* ECF Nos. 6, 10, 11, 13, 17, 24, 26.)

and her son had sent to Mr. Kanter, Defendant also testified that she had made four or five verbal requests for an interpreter to Mr. Kanter.  (*See id.* at 46:25–47:15; *see also* Murad Decl. ¶ 4 ("My family members and I asked my former attorney several times to provide an Arabic translator at trial. . . .  I also had several conversations with him about the matter.").)  Despite Defendant's requests for an interpreter, no interpreter was provided for any hearings or proceedings.  (*See* Aug. 17, 2022 Tr. at 46:14–21.)  Defendant requested an interpreter because, "during every proceeding . . . [she] was kind of lost because everybody . . . in court speaks at the same time and they speak really fast, and . . . [she] also do[es]n't understand the legal language, and so [she] feel[s] like [she is] lost."  (*See id.* at 47:24–48:6.)

Defendant was "very scared" when she learned at the beginning of her trial that she would not have an interpreter.  (*See id.* at 48:11–14.)  Mr. Kanter advised Defendant to go forward without the interpreter and "if at any time [she] d[id]n't understand, they will put it in a simpler language."  (*See id.* at 48:15–24; *see also id.* at 49:12–14.)  Defendant was "scared" to tell the Court that she required an interpreter because she was raised "not . . . to speak to the judge" and "thought it would look bad or it would be bad if [she] told the judge to stop the proceedings."  (*See id.* at 48:25–49:11; *see also id.* at 56:24–57:3.)  Similarly, Defendant did not inform the arresting officers that she did not speak English, (*see id.* at 54:7–13), or request an interpreter during her post-arrest interview despite the fact that she "did not understand" some of the questions because she was "very scared" and was never informed she had the right to an interpreter.  (*See id.* at 49:15–50:4.)

During cross examination at trial, Defendant understood "some of [the prosecutor's] questions" but not all of them.  (*See id.* at 50:5–11; *see also* Murad Decl. ¶ 5 (attesting that Defendant "became confused with the prosecutor's rapid-fire questions").)  She did not inform the Court that she was having difficulty understanding some of the questions because she was "scared," (*see* Aug. 17, 2022 Tr. at 50:12–14), although she believes that "it would have been beneficial" for her to have an interpreter at trial because she could have "answer[ed] . . . questions more completely" and "directly."  (*See id.* at 50:18–51:2.)

## MOTION FOR A NEW TRIAL

### I.   Legal Standard

Under Federal Rule of Criminal Procedure 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." *See* Fed. R. Civ. P. 33(a).  "The burden of establishing that a new trial is warranted rests with the moving party." *United States v. Berckmann*, No. CR 17-00710 SOM, 2018 WL 5778396, at *2 (D. Haw. Nov. 2, 2018) (citing *United States v. Endicott*, 869 F.2d 452, 454 (9th Cir. 1989)), *aff'd*, 817 F. App'x 494 (9th Cir.), and *aff'd*, 971 F.3d 999 (9th Cir. 2020).  The government, however, "bears the burden of proving that constitutional errors are harmless beyond a reasonable doubt." *See Endicott*, 869 F.2d at 454 (citing *Dickson v. Sullivan*, 849 F.2d 403, 405 (9th Cir. 1988).

"The court is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses." *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000) (citing *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992)).  This is because trial judges "experience the tenor of the testimony at trial" and may make "personal evaluations of witness demeanor." *See id.* (quoting *Alston*, 974 F.2d at 1211–12).

"A motion for a new trial is directed to the discretion of the district judge," *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981), and "should be granted 'only in exceptional cases in which the evidence preponderates heavily against the verdict.'" *See id.* (quoting 2 Wright, Federal Practice and Procedure, Criminal § 553 at 487 (1969)).

### II.   Analysis

Defendant asks the Court to grant her a new trial on two grounds: (1) the Court failed to provide her with an interpreter under the Court Interpreters Act, and (2) her trial counsel's failure to secure an interpreter for trial constituted ineffective assistance of counsel.  (*See* Mot. at 4–11.)

/ / /

/ / /

### A.    Interpreter

Defendant's first argument in favor of a new trial is that the Court failed to appoint her an interpreter under the Court Interpreters Act.  (*See* Mot. at 4–10.)  Specifically, Defendant contends that the Court failed to (1) make the requisite determination on the record regarding her English competency and need for an interpreter under 28 U.S.C. § 1827(d)(1)(A),[5] (*see* Mot. at 6–7); and (2) obtain an express waiver pursuant to 28 U.S.C. § 1827(f).  (*See* Mot. at 8–9.)

### 1.    Determination of Defendant's Need for an Interpreter

In relevant part, the Court Interpreters Act provides:

> The presiding judicial officer . . . shall utilize the services of the most available certified interpreter . . . in judicial proceedings instituted by the United States, if the presiding judicial officer determines . . . that . . . a defendant in a criminal case . . . who may present testimony in such judicial proceedings . . . speaks only or primarily a language other than the English language . . . so as to inhibit such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer, or so as to inhibit such witness' comprehension of questions and the presentation of such testimony.

28 U.S.C. § 1827(d)(1)(A).  Pursuant to Ninth Circuit precedent, "[w]hen a court becomes aware of a criminal defendant's potential difficulties in understanding or speaking the English language, it has a mandatory duty to make a determination on the record whether an interpreter is required, and if so, to appoint a certified individual."  *United States v. Jayavarman*, 871 F.3d 1050, 1065 (9th Cir. 2017) (quoting *United States v. Murguia-Rodriguez*, 815 F.3d 566, 570 (9th Cir. 2016)).

Here, the Court was informed only that Defendant "would *like* an Arabic interpreter for the trial," (*see* Email (emphasis added)), and that the requested interpreter was for her "comfort."  (*See* Mar. 22, 2022 Tr. at 5:21–6:8.)  Defendant herself informed the Court that

---

[5] Defendant actually contends that she "falls directly within section (B)," (*see* Mot. at 5), which applies to those who "suffer[] from a hearing impairment (whether or not suffering also from a speech impairment)." *See* 28 U.S.C. § 1827(d)(1)(B).  The Court assumes that Defendant meant to invoke subsection (A) given the lack of any testimony or evidence that Defendant suffers from a hearing impairment.

she was "comfortable" proceeding "slowly" and advising the Court "if she doesn't understand something." (*See id.* at 6:2–7.)  Even assuming that this sufficed to trigger the Court's "mandatory duty to make a determination on the record whether an interpreter is required" and that the Court failed to make the requisite determination, *cf. United States v. Hakopian*, 210 F.3d 386 (9th Cir. 2000) ("Implicit in th[e district court's decision not to require a criminal defendant to testify through an available interpreter] is the district court's determination that [the criminal defendant] spoke English well enough that he could understand and respond to the questions posed to him while he was on the witness stand."), the Ninth Circuit has "regularly remanded . . . cases [in which the defendant's need for an interpreter was overlooked] to the district court to make an initial determination whether the defendant should have been provided with an interpreter."  *See Murguia-Rodriguez*, 815 F.3d at 570 (citing *United States v. Si*, 333 F.3d 1041, 1043 n.4 & 1044 (9th Cir. 2003); *United States v. Mayans*, 17 F.3d 1174, 1179–81 (9th Cir. 1994); *United States v. Lim*, 794 F.2d 469, 470 (9th Cir. 1986)).

Having reviewed the record in this case, the Court concludes that Defendant did not primarily speak a language other than English at the time of trial and, even if she did, her English language abilities were not so deficient as to inhibit her comprehension of the proceedings such that the absence of an interpreter at trial interfered with her statutory or constitutional rights.  First, although Defendant testified at the evidentiary hearing that "[her] primary language is Arabic," (*see* Aug. 17, 2022 Tr. at 48:7–10), and her "ability to understand English right up until the trial" was "about 25 to 30 percent," (*see id.* at 42:11–15), those claims were made only after her conviction and are not supported by the rest the record, which shows that Defendant communicated primarily in English in the years leading up to the trial.  Specifically, Defendant moved to the United States and first learned English over twenty years ago.  (*See* Aug. 17, 2022 Tr. at 41:6–20, 51:11–14; *see also* Mar. 23, 2022 Tr. at 164:13–24.)  While Defendant spoke Arabic with her husband at home until he passed away in 2018, (*see* Aug. 17, 2022 Tr. at 41:22–42:2; Murad Decl. 2d ¶ 3), she has spoken primarily, if not only, English at home for nearly four years with her

non-Arabic speaking surrogate son, Mr. Khaira, (*see, e.g.*, Aug. 17, 2022 Tr. at 36:9–24, 37:13–15, 51:18–52:14), and her minor adopted daughter.   (*See id.* at 52:15–17, 52:24–53:1.)   Her day-to-day interactions are in English, (*see id.* at 51:15–17; *see also* Mar. 23, 2022 Tr. at 164:13–24), and she has non-Arabic-speaking friends.   (*See* Aug. 17, 2022 Tr. at 51:18–21); *see also Marin v. Busby*, No. CV 11-2286-JSL RNB, 2014 WL 2740338, at *31–32 (C.D. Cal. Mar. 7) (concluding that habeas relief was not warranted based on failure to provide interpreter to Spanish-speaking criminal defendant where, among other things, "the testimony of . . . lay witness[es] . . . reflected that [the defendant] was capable of conversing, at least on a social level, exclusively in English"), *report and recommendation adopted*, 2014 WL 2742815 (C.D. Cal. June 17, 2014).   She has communicated only in English with doctors for medical treatment, (*see* Aug. 17, 2022 Tr. at 53:7–16), and Mr. Kanter for legal advice and trial preparation.   (*See, e.g.*, *id.* at 28:9–29:22; Kanter Decl. ¶¶ 4–11); *see also Marin*, 2014 WL 2740338, at *29–30 (crediting defense attorney's testimony that he did not perceive a need for an interpreter at trial where "English was the primary mode of communication between [attorney] and [criminal defendant]" and attorney "had no tactical reason to withhold an interpreter if he believed petitioner needed the service, and he would have incurred no cost or inconvenience in securing an interpreter for petitioner").   Indeed, based on the evidence in the record, it appears that the only person with whom Defendant regularly, although not exclusively, has spoken in Arabic in recent years is her adult son, Hashem, who lives in Minnesota.   (*See* Aug. 17, 2022 at 52:18–23; Murad Decl. 2d ¶ 3; *see also* ECF No. 69 (recordings of primarily English phone calls from custody).)

Defendant's observable interactions in English also demonstrate that, even if she did primarily speak a language other than English at the time of trial, it did not "inhibit [her] comprehension of the proceedings or communication with counsel or the presiding judicial officer, or . . . inhibit [her] comprehension of questions and the presentation of such testimony."   Following her arrest, Defendant held an hour-long conversation with CBP Officers in English, never asking for an interpreter.   (*See generally* Post-Arrest Tr.); *see*

*also Marin*, 2014 WL 2740338, at *30 (concluding that "credible evidence that petitioner had a pretrial interview with a probation officer without the assistance of an interpreter" supported finding that the defendant's constitutional rights were not violated by absence of interpreter). At several points, the Officers took great pains to confirm that Defendant understood her rights and the relevant procedures. (*See* Post-Arrest Tr. at 8:13–12:19, 53:3–55:16, 60:1–64:1.) Defendant was clear about when she required clarification, (*see, e.g.*, *id.* at 47:8, 48:2–49:4), but was also comfortable enough speaking in English with the Officers that she often spoke over them or began answering questions before the Officers had finished asking them. (*See, e.g.*, *id.* at 19:8–10, 21:16–18, 24:20–22, 27:12–14, 29:20–24, 31:14–22, 32:8–9, 36:1–13, 40:23–41:2, 44:4–17, 46:14–16, 47:17–20, 49:5–18, 50:11–14, 53:14–18, 56:7–10, 59:8–13.) Officer Rebolledo later testified at trial that Defendant never gave any indication that she did not understand what he was saying to her and that he was able to understand everything she said to him. (*See* Mar. 22, 2022 Tr. at 60:9–14.) Although Defendant now claims that she "did not understand" some of the questions, (*see* Aug. 17, 2022 Tr. at 49:15–50:4), she has never identified any specific questions or answers.

The same is true of the Court's interactions with Defendant both before, during, and after trial. *See, e.g.*, *Marin*, 2014 WL 2740338, at *30–31 (concluding "the trial record reflects that petitioner communicated with the trial court without obvious difficulty throughout the trial" based on eight interactions—some very "brief"—during which the defendant "responded appropriately to various questions and instructions by the trial court"). The Court's pretrial interactions with Defendant were limited, but at the March 18, 2022 motion *in limine* hearing, Defendant was neither assisted by nor requested an Arabic interpreter. (*See generally* Mar. 18, 2022 Tr.) The Court also briefly spoke with Defendant to ensure that she understood when to appear for the jury trial and that her pretrial release conditions would remain in effect until then. (*See id.* at 33:13–34:5.) Indeed, the Court had no reason to believe that Defendant spoke a language other than English until Mr. Kanter emailed approximately thirty-six hours before the scheduled jury trial that she

"would like an Arabic interpreter for the trial." (*See* Email.)  Despite everyone's best efforts, the requisite two interpreters could not be secured on such a short turnaround. (*See id.*; *see also* Mar. 22, 2022 Tr. at 4:15–5:15.)

The Court therefore began the trial by asking Mr. Kanter to "speak with [his] client to make sure that she is comfortable going forward without the assistance of an Arabic interpreter." (*See* Mar. 22, 2022 Tr. at 4:19–21; *see also id.* at 5:3–6.)  Mr. Kanter and Defendant conversed off the record, (*see* Mar. 22, 2022 Tr. at 5:18), during which time Mr. Kanter discussed with Defendant her two options: (1) moving forward with the trial as scheduled without an interpreter, or (2) continuing the trial to secure an Arabic interpreter. (*See* Aug. 17, 2022 Tr. at 26:8–27:4.)  Defendant "indicated that, while she would have preferred an interpreter, she was comfortable going to trial without one."[6]  (*See* Kanter Decl. ¶ 9; *see also* Mar. 22, 2022 Tr. at 5:21–6:4; Aug. 17, 2022 Tr. at 27:5–7.)  The Court asked, "She's comfortable proceeding in that fashion?," (*see* Mar. 22, 2022 Tr. at 6:5–6), which Defendant herself confirmed. (*See id.* at 6:7.)  The Court therefore added:

> THE COURT: . . .  [I]f there is any issue, Ms. Murad, with understanding anything that's being said, I'm more than happy to have the witness repeat the answer or to phrase it differently.  So I want you to be 100-percent comfortable with understanding everything that's happening.
>
> You have the right to confront and cross-examine all of the witnesses.  So if there is any witness that you are having difficulty understanding, or if you would like a break to talk with Mr. Kanter, I will accommodate that request.  Just let me know.  Okay, ma'am?

(*See id.* at 6:9–18.)  Despite Defendant's claimed fear of addressing the Court, (*see* Aug. 17, 2022 Tr. at 48:25–49:11, 56:24–3), Defendant again indicated her consent, responding "Thank you so much." (*See* Mar. 22, 2022 Tr. at 6:19.)

---

[6] Defendant contends that Mr. Kanter also advised her to go forward without an interpreter. (*See* Aug. 17, 2022 Tr. at 48:20–24, 49:12–14.)  As in *Jayavarman*, this "assertion . . . would have to be raised as part of a Sixth Amendment ineffective assistance of counsel claim." *See Jayavarman*, 871 F.3d at 1065 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

Despite being afforded the opportunity, Defendant never indicated during the trial—even when she took the stand—that she had difficulty understanding anything that was being said or that she required an opportunity to speak with Mr. Kanter.  (*See generally* Mar. 22, 2022 Tr.; Mar. 23, 2022 Tr.; *see also* Kanter Decl. ¶ 10.)  Defendant testified in open court that she "underst[oo]d English," (*see* Mar. 23, 2022 Tr. at 164:23–24), a claim that was corroborated by the confident manner in which she testified both on direct examination and on cross.  Specifically, Defendant spoke "quickly," (*see id.* at 165:17), often answering questions on direct and cross examination before the attorneys even finished asking them.  (*See, e.g.*, *id.* at 175:7–10, 175:11–14, 184:12–16, 185:14–15, 188:11–23, 192:9–13, 195:12–16, 196:17–197:1, 197:24–25, 198:20–199:5, 201:19–22, 202:15–16, 203:4–22, 205:4–6, 206:20–207:4.)  Mr. Kanter later testified that Defendant never indicated that she had trouble understanding the questions she had been asked while testifying or what had happened at trial.  (*See* Aug. 17, 2022 Tr. at 31:11–32:9.)  Further, as Mr. Kanter testified and the Court personally observed, Defendant "was active and engaged during trial," speaking with Mr. Kanter and even "pass[ing him] notes in English." (*See* Kanter Decl. ¶ 11; *see also* Aug. 17, 2022 Tr. at 30:23–31:10.)  To this day, Defendant has failed to identify any specific question she had difficulty understanding.  (*See generally* Mot.; Def.'s Br.)

Indeed, despite having a Jordanian Arabic interpreter available to her for the August 17, 2022 evidentiary hearing, Defendant answered the very first question posed to her in English, (*see* Aug. 17, 2022 Tr. at 40:21–24), prompting Mr. Babcock to instruct her to give "in Arabic all [her] answers."  (*See id.* at 40:23–25.)  In all, Defendant answered half a dozen questions in English before they were fully asked or translated, (*see, e.g.*, *id.* at 40:23–25, 43:8–11, 44:1–13, 45:10–12, 54:18–24), and Mr. Babcock reminded her to answer in Arabic twice.  (*See, e.g.*, *id.* at 40:23–25, 44:14–16.)

Defendant testified that she is "not fluent in English," (*see, e.g.*, Murad Decl. 2d ¶ 3), but fluency is not the relevant standard.  The CIA requires the Court to appoint an interpreter only if Defendant "speaks only or primarily a language other than the English

language . . . so as to inhibit [her] comprehension of the proceedings or communication with counsel or the presiding judicial officer, or so as to inhibit [her] comprehension of questions and the presentation of such testimony."  *See* 28 U.S.C. § 1827(d)(1)(A).  It is true that Defendant's English is not perfect—Mr. Khaira and Ms. Campos, for example, are correct when they note that Defendant "often speaks in the present tense in English when the conte[x]t of the conversation calls for [the] past tense."  (*See* Khaira Decl. ¶ 6; *see also* Aug. 17, 2022 Tr. at 9:2–19.)  But the record does not reveal, and Defendant does not identify, any instances in which Defendant's use of the present tense resulted in any miscommunication at trial, either on her behalf or anybody else's.  Most criminal defendants may need to ask their lawyers to repeat explanations of unfamiliar legal concepts, (*see, e.g.*, Aug. 17, 2022 Tr. at 29:23–30:10), and we have all experienced being misunderstood and asked to repeat ourselves on occasion.  (*See, e.g.*, *id.* at 43:1–44:8.)  Ultimately, Defendant's testimony and demeanor evinced comprehension of the proceedings and questions asked of her, and she consistently articulated appropriate and intelligible responses.

Notwithstanding Defendant's post-trial claim that she may have been more "comfortable" with an interpreter and may have "want[ed] . . . the opportunity to tell [her] story to the jury in [her] native language," (*see* Murad Decl. ¶ 6), on the record before it, the Court concludes that Defendant was fully capable of understanding and communicating in the English language.  Further, having considered the record in this case and having observed the Defendant's demeanor while testifying at the August 17, 2022 evidentiary hearing, the Court finds that:  (1) Defendant's testimony that she told "every attorney that [she] spoke to and that appeared for [her] . . . . that [she] need an interpreter," (*see* Aug. 17, 2022 Tr. at 56:4–8), to be untrue;[7] and (2) Defendant's testimony that she was too "scared"

---

[7]   It appears that Defendant's current attorney agrees with the Court's credibility determination: "Ms. Murad has no problem with the previous representation by any attorney except Mr. Kanter.  The other attorneys only had fleeting contact with Ms. Murad and ha[d] no reason to suspect her language

to alert the Court to unspecified language-related difficulties she experienced during trial, (*see id.* at 48:25–49:11), to also be untrue.  An interpreter was simply not required.  *See, e.g.*, *Jayavarman*, 871 F.3d at 1065–66 (affirming district court's decision that the defendant "spoke and understood English well enough that he did not require an interpreter" where "recorded conversations that were played during trial revealed that [the defendant] was good at understanding and speaking English" and the defendant "did not suggest that he was having trouble understanding the district court when it spoke to him about his right to testify," "had moved to the United States when he was nineteen years old and had lived here for the following twenty-seven years, . . . had long operated a youth hostel in Anchorage that required communication with customers in English, and . . . had communicated extensively in English with one of his friends"); *Gonzalez v. United States*, 33 F.3d 1047, 1050 (9th Cir. 1994) (affirming district court's decision that a Spanish interpreter was not required despite the defendant's "difficulties with English" where he "had lived in Oregon for ten years, was buying his own home, and worked in the auto and truck sales business" and his "answers were consistently responsive, if brief and somewhat inarticulate, . . . he only occasionally consulted his attorney[, and he] never indicated to the court that he was experiencing major difficulty, despite the opportunities afforded him"); *cf. Si*, 333 F.3d at 1044 (remanding for determination as to whether an interpreter was required where "[s]ubstantial portions of the testimony and evidence were presented in languages other than English[, t]he need for an interpreter was discussed with [the defendant]'s attorney[, and the defendant]'s testimony was marked by imperfect English"); *Mayans*, 17 F.3d at 1180 n.3 (concluding that district court abused its discretion by insisting that the defendant try to testify "in English," resulting in his withdrawal as a witness, where, among other things, "the arresting officer . . . had said . . . that appellant spoke 'some

/ / /

---

difficulties.  *She probably never asked them for an interpreter* because she had never been informed that she had the right to request one."  (*See* Def.'s Br. at 6 (emphasis added).)

English' [and] . . . that at his arrest, appellant 'went to Spanish because he felt comfortable in Spanish'").

### 2. Waiver

Defendant also contends that the Court failed to obtain an express waiver of interpretation from her pursuant to 28 U.S.C. § 1827(f), (*see* Mot. at 8–9), which provides in relevant part:

> Any individual . . . who is entitled to interpretation . . . may waive such interpretation in whole or in part. Such a waiver shall be effective only if approved by the presiding judicial officer and made expressly by such individual on the record after opportunity to consult with counsel and after the presiding judicial officer has explained to such individual, utilizing the services of the most available certified interpreter . . . the nature and effect of the waiver.

28 U.S.C. § 1827(f)(1). Although case law applying this provision is scarce, the Ninth Circuit has emphasized that "[a] party may waive his right to utilize an interpreter 'only if' the waiver has been made 'expressly by [the party] on the record,' 'after opportunity to consult with counsel,' and 'after the presiding judicial officer has explained to such individual . . . the nature and effect of the waiver.'" *Murguia-Rodriguez*, 815 F.3d at 571 (second and third alterations in original) (quoting 28 U.S.C. § 1827(f)(1)).

Defendant contends that, "[w]hile this court moved in the right direction by asking defendant if she wanted an interpreter, it did not go far enough to [e]nsure that she was knowingly and voluntarily giving up her right to an interpreter." (*See* Mot. at 8.) Because Defendant did not require an interpreter, *see supra* Section II.A.1, a waiver was not required. Nonetheless, the Court asked Mr. Kanter "to take some time and speak with your client to make sure that she is comfortable going forward without the assistance of an Arabic interpreter." (*See* Mar. 22, 2022 Tr. at 4:19–21; *see also id.* at 5:3–5.) Mr. Kanter then spoke with Defendant, (*see id.* at 5:16–18), informing her that she had the option of either going forward with the trial as scheduled without an interpreter or continuing the trial until an interpreter was available. (*See also* Aug. 17, 2022 Tr. at 26:19–27:7.) The Court also explained to Defendant that she "ha[d] the right to confront and cross-examine

all of the witnesses." (*See* Mar. 22, 2022 Tr. at 6:14–15.)  When the Court asked whether Defendant was "comfortable proceeding" without an interpreter and "go[ing] slowly and if she doesn't understand something . . . advis[ing] us," Defendant clearly responded, "Yes." (*See id.* at 6:3–7.)  Consequently, even if Defendant was entitled to the use of an interpreter pursuant to 28 U.S.C. § 1827(d)(1)(A), she made an informed and explicit waiver of that right under 28 U.S.C. § 1827(f)(1).  *Cf. Murguia-Rodriguez*, 815 F.3d at 571–72 (concluding that trial judge failed to comply with procedural requirements of 28 U.S.C. § 1827(f)(1) where criminal defendant indicated that he wished to proceed in English at his sentencing hearing and the court then dismissed the interpreter to perform "other duties").

Because the Court concludes that Defendant spoke and understood English well enough at the time of trial that an interpreter was not required and that Defendant expressly waived any right to an interpreter at trial, the Court **DENIES** Defendant's Motion for a new trial based on her not being appointed an Arabic interpreter.

### B.   Ineffective Assistance of Counsel

Finally, Defendant contends that Mr. Kanter was ineffective for failing to "object to going forward with trial without an interpreter." (*See* Mot. at 10.)  "Under *Strickland v. Washington,* 466 U.S. 668 . . . (1984), [Defendant] must show that [Mr. Kanter]'s failure to request an interpreter constituted ineffective assistance and that [s]he, [Defendant], was prejudiced thereby." *See Gonzalez*, 33 F.3d at 1051.  The United States argues that "Defendant has not shown that any reasonable defense attorney would believe that she needed an interpreter or that the absence of an interpreter prejudiced her." (*See* Opp'n at 9.)

For the reasons discussed above, *see supra* Section II.A.1, the Court agrees with the government.  "Counsel is not ineffective in failing to recognize language difficulties when a defendant is consistently responsive and never indicates to the court difficulty understanding despite opportunities to do so." *United States v. Lopez-Arroyo*, No. CIV 13-1992-TUC-CKJ, 2015 WL 5601839, at *8 (D. Ariz. Sept. 23, 2015) (first citing *United*

*States v. Finze*, 428 F. App'x 672, 677 (9th Cir. 2011) (unpublished); then citing *United States v. Nostratis*, 321 F.3d 1206, 1209 (9th Cir. 2003); finally citing *Gonzalez*, 33 F.3d at 1051). Here, Mr. Kanter testified that all of his discussions with Defendant—including their trial preparation—were in English, (*see* Aug. 17, 2022 Tr. at 28:9–29:15; *see also* Kanter Decl. ¶¶ 4–5), and that he understood Defendant, (*see* Aug. 17, 2022 Tr. at 29:21–22; *see also* Kanter Decl. ¶ 6), and she seemed to understand him. (*See* Aug. 17, 2022 Tr. at 29:16–20; *see also* Kanter Decl. ¶ 6.) Further, Defendant spoke with Mr. Kanter in English during the trial, (*see* Aug. 17, 2022 Tr. at 30:23–31:10), and never "indicate[d] . . . that she was having linguistics difficulties following the trial" or that she "d[id not] understand what's going on" or what any "witness [wa]s testifying to." (*See id.* at 31:11–19.) In short, Defendant "has not shown h[er] counsel performed outside the range of professionally competent assistance by failing to request interpreter services after the start of trial because [she] has not shown that there was any need for an interpreter or that counsel was aware of any such need." *See Qazza v. Kane*, No. SACV04-1089DSF(E), 2008 WL 4826116, at *13 (C.D. Cal. Nov. 6, 2008) (citing *Gonzalez*, 33 F.3d at 1051).

Defendant has also failed to demonstrate prejudice. Although Defendant generally contends that she "could not answer directly because she didn't completely understand the prosecutor's questions," (*see* Mot. at 9), she fails to identify a single question that she failed to understand. Indeed, the one time she did appear to have difficulty understanding what the prosecutor had asked her, she explicitly requested clarification. (*See* Mar. 23, 2022 Tr. at 203:23–25.) She even told the prosecutor at one point to "be[] patient with me, please[.]" (*See id.* at 204:15.) Simply stated, there is no evidence to support that, but-for Mr. Kanter's failure to secure an interpreter, Defendant would have been found not guilty. The Court therefore **DENIES** Defendant's Motion for a new trial on ineffective assistance of counsel grounds.

## MOTION TO DISMISS

Defendant also requests that the Court dismiss Count 1 of the Indictment pursuant to its supervisory powers. (*See* Mot. at 11 (citing *United States v. Barrera-Moreno*, 951

F.2d 1089, 1091 (9th Cir. 1991)).)  These "supervisory powers" stem from the Supreme Court's recognition "that federal courts 'may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress.'"  *See United States v. W.R. Grace*, 526 F.3d 499, 511 (9th Cir. 2008) (quoting *United States v. Hasting*, 461 U.S. 499, 505 (1983)).  Although the Ninth Circuit previously understood these inherent powers to be limited to "three specific areas," *see id.* at 499 n.9 (quoting *United States v. Gonsalves*, 781 F.2d 1319, 1320 (9th Cir. 1986)), the Ninth Circuit has since reverted to a prior and broader understanding pursuant to which "[a] federal court has the responsibility to supervise the administration of criminal justice in order to ensure fundamental fairness." *See United States v. Richter*, 488 F.2d 170, 173–74 (9th Cir. 1973) (quoting *United States v. Baird*, 414 F.2d 700, 710 (2d Cir. 1969), *cert. denied*, 396 U. S. 1005 (1970)).  "Of course, '[w]hatever the scope of this 'inherent power,' . . . it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure.'" *Grace*, 526 F.3d at 511 (alteration in original) (quoting *Carlisle v. United States*, 517 U.S. 416, 426 (1996)) (citing *Atchison, Topeka & Santa Fe Ry. Co. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998)).  The trial court is afforded significant, but not unlimited, discretion with respect to its inherent powers because it "is best situated to administer the law and protect the rights of all." *See Richter*, 488 F.2d at 174.

Count 1 of the Indictment charges Defendant with aiding and abetting the bringing in of aliens for financial gain pursuant to 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2. (*See* ECF No. 1.)  Defendant contends that this Count must be dismissed "because there is a lack of solid, credible[] evidence that Ms. Murad committed the crime for financial gain." (*See* Mot. at 11.)  The government responds that, "[i]n a prosecution for bringing in aliens for financial gain and aiding and abetting, 'the government need only show that the principals stood to benefit financially from smuggling,' not that Defendant herself would benefit financially or was motivated by financial gain." (*See* Opp'n at 13 (quoting *United States v. Lopez-Martinez*, 543 F.3d 509, 515 (9th Cir. 2008)) (citing *United States v. Tsai*, 282 F.3d 690, 697 (9th Cir. 2002)).)

As the government notes, (*see id.*), Mr. Rosales-Flores testified that he was going to pay $16,000 to be smuggled into the United States. (*See* Tr. of Gov't Ex. 102 at 13:6–16; *see also* Mar. 22, 2022 Tr. at 55:11–24.)  Under the case law cited by the United States, this testimony suffices to establish the financial gain element. *See Lopez-Martinez*, 543 F.3d at 512–13, 515 (affirming conviction for aiding and abetting the bringing of aliens to the United States for financial gain of a foot guide where the alien agreed to pay $1,800 to a smuggler); *Tsai*, 282 F.3d at 697 (affirming conviction for aiding and abetting the bringing of three aliens to the United States for financial gain by an escort on an airplane on evidence including that one of the alien's sister paid to have her smuggled into the United States).  The Court therefore **DENIES** Defendant's Motion to the extent she seeks dismissal of Count 1 of the Indictment based on insufficient evidence.

## CONCLUSION

In light of the foregoing, the Court **DENIES** Defendant's Motion for a new trial and to dismiss Count 1 of the Indictment (ECF No. 59). The Probation Office shall prepare a presentence report and a sentencing hearing will be held on January 27, 2023, at 9:30AM.

**IT IS SO ORDERED.**

Dated:   10/26/2022

**HONORABLE TODD W. ROBINSON**
United States District Judge

30

21-CR-2701 TWR